IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONNIE WIMBUSH #360-137         *
      Plaintiff,
v.                              *   CIVIL ACTION NO. JKB-11-1916

DR. MATERA, et al.              *
      Defendants

**MEMORANDUM**

On July 11, 2011, state prisoner Ronnie Wimbush filed a civil rights action seeking money damages. The action proceeded as to his allegation that two employees of ECI's contractual medical provider failed to provide adequate medication to relieve his severe and chronic pain. The parties submitted various motions in response to the complaint (ECF Nos. 11 and 19), and on February 13, 2012, the undersigned by written Memorandum and Order held defendants' motion for summary judgment in abeyance to permit the parties to provide additional responses. ECF Nos. 23 and 24.

In declining to grant summary judgment on then-pending dispositive submission, the undersigned found that defendants withheld medications that previously controlled Wimbush's chronic pain because they believed he might become addicted or because the drugs were "non-formulary." The undersigned also noted:

> Other forms of pain management have not been explored. Medications that have proven somewhat effective have been abruptly withdrawn because they are considered "non-formulary." Similarly, approval for some prescribed medication that might prove efficacious has not been forthcoming due to the drugs' "non-formulary" status. Defendants have not delineated exactly who defines such status and whether provisions exist for medical care providers to override the denial of necessary drugs to ensure adequate patient care. Lastly, defendants base the denial of certain medications based on "policy." The court is unaware of a policy concerning administration of narcotic medications within the DOC or within specific DOC institutions. And, apart from medical science, logic alone raised the question whether it is appropriate to deny the Plaintiff Lyrica in particular, given his severe orthopedic history and given the success he previously enjoyed when that medicine was part of his therapy. Whether a drug is 'non-formulary" carries little weight in the specific context of this case where there is powerful evidence indicating [plaintiff's] pain is real and severe.

Counsel was granted an opportunity to respond to these concerns. ECF No. 23 at 10. Those responses have been received.[1] ECF Nos. 32 and 36. A hearing is not necessary at this time. For reasons set forth herein, defendants' dispositive motion as supplemented shall be denied and plaintiff's request for appointment of counsel (ECF No. 30) shall be granted.

As previously stated, a federal district court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 376-77 (2007). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380. In the context of a prisoner civil rights claim involving medical care, the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). When contractual prison health care providers show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104. However, the medical treatment provided (or withheld) must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990).

It appears that plaintiff, now held at NBCI, is receiving Ultram (tramadol)[2] for pain. ECF No. 32, Exhibit A, ¶ 8. The fact that he often refuses to take other prescribed medications in addition to this narcotic-like medication leads to the conclusion that Ultram is for the most part controlling his pain; thus, NBCI medical providers have addressed plaintiff's pain management concerns. Plaintiff's resistance to adding additional medications to his pain management regime is irrelevant to the question of whether appropriate pain medications were provided to him while he was housed at ECI.[3] Defendants have provided no information as to ECI's "policy"

---

[1] Plaintiff requests an update of case status and access to computer data. ECF No. 22. The data, which allegedly relates to psychiatric records, does not appear relevant to this case and shall be denied. Plaintiff's objection to an extension of time (ECF No. 29) and his motion to strike defendants' submission of his most recent medical records (ECF No. 37) are denied. The Clerk shall amend the docket to reflect that plaintiff's "motion to dismiss defendants' motion for summary judgment" (ECF No. 36) is not a "motion" but rather is an opposition response to defendants' dispositive motions (ECF Nos. 11 and 32).

[2] Ultram, a narcotic-like medication, is used to treat moderate to severe chronic pain. *See* http://www.drugs.com/ultram.html.

[3] For that reason, medical records generated by NBCI health care providers will not be considered in conjunction with this case. Plaintiff's motion to strike those records (ECF No. 37) shall be granted, with one exception; the court notes that he now receives Ultram for pain.


concerning certain prescription medication,[4] nor have they indicated whether either of them is able to override decisions by the utilization contractor (Wexford) when that company declines to supply a "non-formulary" medication[5] prescribed by Corizon medical personnel.[6] Indeed, there is some question as to whether additional defendants, including the utilization contractor, may be needed to resolve this case.

To that end, summary judgment shall be denied and counsel appointed in a separate order.

James K. Bredar
United States District Judge

7/2/12

---

[4] The court notes that on at least one occasion an ECI prisoner was provided with Ultram for pain. *See Justice v. Green, et al.,* Civil Action No. JFM-11-266 (D. Md.). Dr. Matera was a defendant in that case.

[5] The court is unable to ascertain whether medications that are somewhat "similar" to Lyrica are in fact proper substitutions for that drug. Furthermore, there is no indication that the abrupt discontinuance of Lyrica after it had been used by plaintiff may have exacerbated his pain.

[6] The court has no way to ascertain, by affidavit or otherwise, whether Physician's Assistant Stanford has the authority to prescribe some of the medications at issue here, or whether he has any "override" authority or input when a utilization review provider denies same.