IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RONNIE WIMBUSH, | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. JKB-11-1916 |
| PAUL MATERA, M.D., *et al.*, | * | |
| Defendants | * | |
|  | * | |

## MEMORANDUM

Ronnie Wimbush ("Plaintiff") brought this suit against Corizon, Inc., Wexford Health Sources, Inc., Dr. Paul Matera and Peter Stanford ("Defendants") alleging violations of the Eighth Amendment to the Constitution of the United States. Now pending before the Court is Defendant Wexford Health Sources, Inc.'s motion to dismiss or, in the alternative, for summary judgment (ECF No. 76). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Wexford's motion to dismiss or, in the alternative, for summary judgment will be GRANTED IN PART and DENIED IN PART.

I.     BACKGROUND

Plaintiff is currently "an inmate in custody at the North Branch Correctional Institute, a prison in the Maryland correctional system." (Am. Compl. ¶ 1; ECF No. 63.) From April 2009 until 2011, Plaintiff was in custody at Eastern Correctional Institution ("ECI"), also a prison in the Maryland correctional system. (*Id.* ¶¶ 1, 10.)

On June 15, 2008, before Plaintiff's current period of incarceration and when he was not in custody, "Plaintiff sustained serious fractures and other injuries to his right leg and ankle, due to a fall." (*Id.* ¶ 8.) As a result of those injuries, Plaintiff has two plates in his right fibula, two plates in his right ankle, and over 30 screws in his right leg. (*Id.* ¶ 9.) Since his injury, Plaintiff suffers from moderate to severe chronic pain on a daily basis, and the pain is often so intense that it prevents Plaintiff from walking on his right leg and disturbs his sleep. (*Id.* ¶ 11.) Prior to his current incarceration, "Plaintiff received multiple pain control regimens from his health care providers." (*Id.* ¶ 12.) The most effective treatment Plaintiff received for controlling his pain was Lyrica, "a chronic pain medication." (*Id.*)

In 2009, during his incarceration at ECI, "prison medical staff prescribed various combinations of pain medications to Mr. Wimbush without success." (*Id.* ¶ 13.) Plaintiff told the medical staff "that pain management regimens that included Lyrica had worked better for him in the past." (*Id.*) In August 2010, a physician on the prison medical staff prescribed Lyrica to Plaintiff, in addition to Neurontin and other drugs. (*Id.* ¶ 14.) The prescription had to go through an approval process, because the Maryland prison system considers Lyrica a "non-formulary" drug. (*Id.*) The request was approved, Plaintiff received Lyrica for a short period of time, and it "successfully treated [his] chronic pain." (*Id.*) However, a "Pain Committee" discontinued the prescription shortly thereafter. (*Id.* ¶ 15.) Defendants and other prison medical staff have denied Plaintiff's repeated requests to have the Lyrica prescription reinstated. (*Id.* ¶ 18.) Plaintiff further alleges that through February 4, 2013, the date of the Amended Complaint, Plaintiff had not "been afforded proper medication for his chronic pain." (*Id.* ¶ 22.)

On July 11, 2011, Plaintiff filed a *pro se* complaint (ECF No. 1) against Defendants Matera and Stanford, who moved to dismiss or, in the alternative, for summary judgment (ECF

No. 11). On July 2, 2012, the Court denied Defendants' motion to dismiss or, in the alternative, for summary judgment, and granted Plaintiff's motion for appointment of counsel, noting that "there [was] some question as to whether additional defendants, including the utilization contractor [Wexford], may be needed to resolve this case." (ECF No. 43.) On February 4, 2013, with leave of the Court, Plaintiff filed an amended complaint that named Wexford and Corizon, Inc. as Defendants. (ECF No. 63.) Through the motion that is currently pending before the Court, Wexford seeks dismissal of, or summary judgment on, the amended complaint. (ECF No. 76.)

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a

party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III. ANALYSIS

#### A. Wexford's Role as Utilization Management Contractor

The parties do not dispute that until July 2012, Defendant Corizon, Inc. was "the primary provider of medical services in the Maryland correctional system," and Wexford was "a utilization management contractor." (*See* Am. Compl. ¶¶ 2, 3.) For the reasons below, the amended complaint fails to state a claim against Wexford in connection with its role as a utilization management contractor.

In the body of the amended complaint, in which Plaintiff alleges the facts that support his claims, Plaintiff recounts relevant portions of his medical history and his interactions with the prison medical staff, including the discontinuance of his Lyrica prescription. (*See* Am. Compl. ¶¶ 8-22.) Plaintiff alleges that prison medical staff prescribed him Lyrica, but shortly thereafter the prescription was "discontinued by the Pain Committee.'" (*Id.* ¶¶ 14, 15.) Plaintiff's allegations in this portion of the amended complaint do not connect—even in a conclusory manner—the Pain Committee's discontinuance of Plaintiff's Lyrica prescription to any decision, action or failure to act by Wexford in its role as a utilization management contractor. The only allegations in this portion of the amended complaint that refer to Wexford read as follows:

4

> 21. Wexford became the primary health care provider in the prison medical system in July 2012.
>
> 22. Through the date of this First Amended Complaint, Mr. Wimbush continues to be denied Lyrica by Wexford and its employees, and has not been afforded proper medication for his chronic pain. Mr. Wimbush was denied other effective pain management treatments, including physical therapy, medical ice, and therapeutic shoes.

(*Id.* ¶¶ 21-22.) These allegations appear to relate solely to Wexford's performance as the primary provider of medical services in the Maryland prison system, beginning July 1, 2012.

The amended complaint also makes allegations against Wexford that are specific to Counts IV and V. However, several of these allegations explicitly refer to only the period "[s]ince July 2012." (*See id.* ¶¶ 51, 52, 62.) Even assuming that Plaintiff intends the remaining allegations in connection with Counts IV and V to apply to the period before July 2012—because the Court must read the allegations in the light most favorable to Plaintiff—these allegations consist largely of conclusory statements and legal conclusions.[1] More importantly, these allegations do not state a connection between Wexford and the Pain Committee's decision

---

[1] *See, e.g.*, Am. Compl. ¶ 53 ("Wexford had actual and/or constructive knowledge that the prison medical staff was denying Mr. Wimbush medication that had been previously prescribed to him and that had been effective in managing his pain. Wexford was aware that Mr. Wimbush had been prescribed Lyrica for his chronic pain and that it had proved effective in treating the pain in the past, and that he was denied it by its employees and agents."); *id.* ¶ 54 ("Wexford had actual and/or constructive knowledge that the decision to deny Mr. Wimbush Lyrica was made without appropriate investigation into Mr. Wimbush's medical condition and medical history."); *id.* ¶ 58 ("Wexford's inaction affirmatively caused Mr. Wimbush's continued chronic pain and suffering. Wexford's employees and agents relied on Wexford's authorization and lack of intervention in deciding to continue their denial of appropriate medical care to Mr. Wimbush."); *id.* ¶ 63 ("Among other things, Wexford's policies, procedures, and customs caused health care providers to deny medical treatments to Mr. Wimbush and other inmates for non-medical reasons and without appropriate investigation."); *id.* ¶ ("Wexford's policies, procedures and customs with regard to non-formulary drugs [*sic*] prescriptions and approvals caused prison medical staff to deny effective pain medications to inmates suffering from chronic pain, including Mr. Wimbush. For example, Wexford's policies and procedures caused Mr. Wimbush's medical providers to continue denying him Lyrica and other effective pain management treatments, including physical therapy, medical ice, and therapeutic shoes.").

to discontinue Plaintiff's Lyrica prescription. Therefore, the amended complaint fails to state a claim against Wexford for which relief can be granted in connection with its role as a utilization management contractor.

### B. Wexford's Role as Primary Provider of Medical Services

Beginning in July 2012, Wexford "became the primary provider of medical services for inmates in Maryland's prison system." (Am. Compl. ¶ 3.) Plaintiff alleges that since that time, Wexford and its employees have continued to deny Plaintiff a prescription for Lyrica. (*Id.* ¶ 22.) In addition, Plaintiff alleges that Wexford has not "afforded [him] proper medication for his chronic pain." (*Id.*) The Court has previously held that, given Plaintiff's medical history and communications with Defendants, these allegations are sufficient to state a claim for which relief can be granted.[2]

Wexford supplemented its briefs with extensive supporting exhibits, and it argues that the Court should grant summary judgment in its favor on the basis of those exhibits. Specifically, Wexford argues that it has provided Plaintiff with Ultram, an alternative medication that adequately controls Plaintiff's pain. In addition, Wexford argues that Plaintiff has acknowledged to his doctors that Ultram adequately controls his pain.

Wexford has the right to file a motion for summary judgment at any time until 30 days after the close of discovery. FED. R. CIV. P. 56(b). However, given the posture of this case, a grant of summary judgment at this time would be premature. First, Wexford has not established that there is no dispute of material fact. Wexford's argument relies heavily on documents it has identified as the "Relevant Medical Records of Ronnie Wimbush" (*see* Def. Br. p. 7, Ex. 1) and

---

[2] Wexford argues that it is not a person for purposes of 42 U.S.C. § 1983, and that Plaintiff's claims against Wexford fail because the doctrine of *respondeat superior* does not apply to § 1983 claims. Corporations can be "persons" within the meaning of § 1983 when they are state actors. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999). Furthermore, Plaintiff does not state claims against Wexford under a theory of *respondeat superior*, but rather for supervisory liability and policy and custom liability. *See id.*; *Miltier v. Boern*, 896 F.2d 848, 854 (4th Cir. 1990), abrogated on other grounds by *Framer v. Brennan*, 511 U.S. 825, 840 (1994).

an affidavit in which one of Plaintiff's doctors attests that, "to a reasonable degree of medical probability, Plaintiff's chronic pain is being appropriately managed with satisfactory control of Plaintiff's breakthrough pain on his current treatment plan" (ECF No. 76-4). However, these documents do not establish that Plaintiff has received Ultram at all times since July 1, 2012, and they do not establish that Ultram has adequately controlled Plaintiff's chronic pain.[3]

Second, Plaintiff has not yet had an opportunity to seek full discovery from Wexford, so he may not have access to the documents necessary to dispute the motion for summary judgment.[4] On September 11, 2012, before Plaintiff filed the amended complaint, the Court issued an order that authorized Plaintiff to issue a Rule 30(b)(6) deposition notice to Wexford, which was not a party to this case at that time. Plaintiff conducted the Rule 30(b)(6) deposition on November 30, 2012. At the deposition, the parties had a disagreement over the scope of the Rule 30(b)(6) notice, and Wexford's counsel identified Dr. Ottey—the Wexford employee on whose affidavit Wexford now relies—as the "doctor most responsible for [Plaintiff's] care." (Pl. Reply Br. at 15.) However, since Plaintiff filed his amended complaint, he has been barred by Rule 26(d)(1) from seeking further discovery from Wexford or Dr. Ottey. For this reason, Plaintiff is not in a fair position to respond to Dr. Ottey's affidavit. Therefore, the Court will not grant summary judgment in favor of Wexford at this time. The issuance of this order begins the

---

[3] In the amended complaint, Plaintiff describes Ultram as "another pain medication that could have provided him relief." (Am. Compl. ¶ 20.) The Court interprets this allegation as Plaintiff's attempt to demonstrate Defendants' indifference, in that they did not initially try Ultram when they stopped his Lyrica prescription. In the light most favorable to the Plaintiff—and particularly as interpreted in the context of Plaintiff's allegation that he "has not been afforded proper medication for his chronic pain"—this allegation does not establish that Ultram is *sufficient* to control Plaintiff's pain.

[4] Wexford notes that Plaintiff did not present this argument in an affidavit, as required by Rule 56(d). (Pl. Reply Br. at 17-19.) However, Wexford's case law stands for the proposition that this failure is a sufficient reason not to consider the argument. It does not establish that a district court is prohibited from considering the status of discovery—or taking judicial notice of the procedural posture of a case—if a party fails to present the argument in an affidavit.

clock on Wexford's obligation to file an answer, after which the Court will convene a scheduling conference to discuss—among other things—continued discovery in this case.

IV. CONCLUSION

Accordingly, an order shall issue GRANTING IN PART and DENYING IN PART Defendant Wexford's motion to dismiss or, in the alternative, for summary judgment (ECF No. 76).

Dated this  23rd day of July, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge